UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 12-bk-26779 |
| Victoria C. Quade, | Chapter 7 |
| Debtor. | Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

The matter before the court arises out of two motions: (1) the Motion for Relief from the Automatic Stay (the "Stay Relief Motion") [Docket No. 18] of Entertainment Events, Inc. ("EEI") and (2) Debtor's Motion To Avoid Judicial Lien on Exempt Property and Recover Exempt Property (the "Lien Avoidance Motion") [Docket No. 21] of Victoria C. Quade ("Debtor"). The Stay Relief Motion and the Lien Avoidance Motion are referred to collectively herein as the "Motions".

This Memorandum Decision constitutes this court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Separate Orders will be entered pursuant to Bankruptcy Rule 9021.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the Bankruptcy Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). A request for relief from stay under section 362(d) of the Bankruptcy Code arises in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(G); *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 976–77 (N.D. Ill. 1992). A motion to avoid a judicial lien under section 522(f)(1) of the Bankruptcy Code arises in a case under title 11, and a determination of the validity, extent, or priority of liens is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(K); *In re Rosol*, 114 B.R. 560, 562 (Bankr. N.D. Ill. 1989).

Accordingly, final judgment is within the scope of the court's authority.

1

## PROCEDURAL HISTORY

In considering the Motions, the court has considered the arguments of the parties at the July 24, 2012 hearing and the August 29, 2012 hearing, and has reviewed and considered the Motions themselves, the various attached exhibits submitted in conjunction therewith, as well as:

(1)  The Response to Debtor's Motion To Avoid Judicial Lien on Exempt Property and Recover Exempt Property, and Creditor's Objections to Claimed Exemption [Docket No. 22] (the "Response");

(2)  The Debtor's Reply to Entertainment Events Inc.'s Response to Debtor's Motion To Avoid Judicial Lien on Exempt Property and Recover Exempt Property [Docket No. 23];

(3)  The Debtor's Response to Motion To Modify Stay Filed by Entertainment Events, Inc. [Docket No. 25];

(4)  The court's Order Setting Briefing Schedule [Docket No. 30];

(5)  The Stipulated Statement of Procedural Facts [Docket No. 31];

(6)  The Memorandum in Opposition to Debtor's Lien Motion and in Support of Creditor's Stay Motion [Docket No. 32];

(7)  The Debtor's Memorandum in Support of Debtor's Motion To Avoid Judicial Liens and in Opposition to Motion to Modify Stay Filed by Entertainment Events, Inc. [Docket No. 33];

(8)  The Memorandum in Opposition to Debtor's Lien Motion and in Support of Creditor's Stay Motion [Docket No. 34];

(9)  The Complaint To Avoid and Recover Preferential Transfers of Exempt Property Pursuant to Section 522(h) [Docket No. 35] [Adv. Pro. 12-01295, Docket No. 1];

(10) The Debtor's Memorandum in Reply to Entertainment Event Inc.'s Memorandum in Opposition to Debtor's Lien Motion and In Support of Creditor's Stay Motion [Docket No. 36]; and

(11) The Response to Debtor's Memorandum in Support of Lien Motion and in Opposition to Stay Motion [Docket No. 37].

Though the foregoing is not an exhaustive list of the filings in the above-captioned adversary proceeding, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, No. 93C188, 1993 WL 69146 at *2 (N.D. Ill. March 8, 1993), *In re Fin.Partners*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989) (authorizing a bankruptcy court to take judicial notice of its own docket).

FACTUAL HISTORY

From the foregoing review and consideration, the court finds the following facts to be undisputed:

(1) EEI possesses against Debtor a judgment in the amount of $884,056.55 (the "Judgment"), registered on September 29, 2011 with the Circuit Court of Cook County, Illinois (the "State Trial Court").

(2) On October 4, 2011, EEI served third party citations (the "Original Third Party Citations") on Nuns4Fun Entertainment, Inc., Quade Productions, Ltd. and Quade/Donovan Entertainment, Inc. (the "Corporations"), three corporations in which the Debtor was an officer, director and shareholder.

(3) On October 7, 2011, EEI recorded a memorandum of judgment (the "Memorandum of Judgment") with the Cook County Recorder of Deeds.

(4) On October 20, 2011, the Debtor answered the Original Third Party Citations as agent of the Corporations, certifying that none of the Corporations were holding any personal property or monies belonging to the Debtor, individually.

(5) On October 21, 2011, EEI issued an alias citation to discover assets (the "Alias Citation") to Debtor.

(6) On October 27, 2011, the examination on the Original Third Party Citations was continued.

(7) On November 2, 2011, the Alias Citation was served upon the Debtor.

(8) On November 14, 2011, EEI issued a non-wage garnishment (the "Garnishment") to Merrill Lynch & Co. ("Merrill Lynch") that was served on Merrill Lynch that same day, with notice being mailed to the Debtor the following day.

(9) On November 17, 2011, the Debtor appeared in response to the Alias Citation with her counsel, Andre & Diokno. The Debtor was sworn and produced some, but not all, documents in the rider attached to the Alias Citation. The State Trial Court set a deadline for the Debtor to produce documents and continued the Debtor's examination on the Original Third Party Citations.

(10) On November 17, 2011, an order was entered granting EEI a judicial lien on any proceeds that may become due and owing to the Debtor in the lawsuit pending in the United States District Court for the Northern District of Illinois known as *Maripat Donovan v. Victoria C. Quade*, Case No. 05 C 3533 (the "District Court Lawsuit").

(11) On November 23, 2011, the Original Third Party Citations were again continued.

(12) On December 9, 2011, counsel for EEI received Merrill Lynch's answer on the Garnishment revealing that Merrill Lynch was holding funds belonging to the Debtor.

3

(13) On December 14, 2011, EEI filed a motion for turnover requesting liquidation of the funds being administered by Merrill Lynch (the "ML Turnover Motion") and scheduled the ML Turnover Motion for presentation on January 12, 2012.

(14) On December 22, 2011, the Debtor produced the additional documents requested in the attachment to the Alias Citation.

(15) On December 28, 2011, the Debtor appeared for the continued examination on the Original Third Party Citations.

(16) On December 28, 2011, EEI issued to and served on the Debtor as Trustee of the Victoria Quade Revocable Trust dated July 17, 1997 (the "Trust") an additional third party citation (the "Second Third Party Citation" and together with the Original Third Party Citations, the "Citations"). The Debtor was the settlor, beneficiary and trustee of the Trust.

(17) On January 4, 2012, the Debtor, as trustee, answered the Second Third Party Citation served on the Trust, certifying that the Trust was not holding any personal property or monies belonging to the Debtor, individually.

(18) On January 9, 2012, EEI filed its Second Motion for Turnover of the assets in the Quade Trust (the "Trust Turnover Motion" and together with the ML Turnover Motion, the "Turnover Motions").

(19) On January 12, 2012, the Citations were continued and the State Trial Court set a briefing schedule on the Turnover Motions.

(20) On February 8, 2012, the Debtor filed her response to the ML Turnover Motion wherein the Debtor argued that her Roth IRA and Individual IRA were exempt.

(21) On February 22, 2012, EEI filed its reply to Debtor's response to ML Turnover Motion wherein EEI argued that the Debtor had waived her right to claim exemptions.

(22) On February 23, 2012, the Citations were again continued.

(23) On March 27, 2012, the State Trial Court heard arguments on the Turnover Motions and all the pending Citations were continued.

(24) On April 5, 2012, EEI filed a Motion for Rule To Show Cause and Sanctions against the Debtor.

(25) On April 5, 2012, the Debtor filed an Emergency Motion To Supplement her Response to the ML Turnover Motion, a Motion for Citation Hearing To Declare Exempt Assets and a Claim and Declaration of Exemptions.

(26) On April 11, 2012, EEI filed its Notice of Third Party Claim in the District Court Lawsuit.

(27) On April 12, 2012, the State Trial Court ordered, *inter alia*, that the Debtor was to turn over and assign to EEI the judgment that had been entered in her favor in the District Court Lawsuit.

(28) On April 17, 2012, EEI filed a Motion To Intervene in Post Judgment Proceedings in the District Court Lawsuit (the "Motion To Intervene").

(29) On April 19, 2012, United States Magistrate Judge Nan R. Nolan granted EEI's Motion To Intervene.

(30) On May 1, 2012, the Citations were continued.

(31) On June 14, 2012, the Citations were again continued.

(32) On June 21, 2012, the State Trial Court issued an order granting the Turnover Motions. A copy of the order was served on Merrill Lynch that same day, but Merrill Lynch responded that it needed an order with more specific instructions.

(33) Accordingly, on June 22, 2012, EEI noticed a Motion for Supplemental Turnover Order and on June 25, 2012, the State Trial Court entered said supplemental turnover order (the "Supplemental Turnover Order").

(34) On June 25, 2012, the Debtor filed a Notice of Appeal to the Illinois First District Appellate Court (the "State Appellate Court").

(35) On June 25, 2012, the Debtor also filed an Emergency Motion To Stay Enforcement in the State Trial Court, which was denied. Later that same day, the Debtor filed an emergency Motion To Stay Enforcement in the State Appellate Court.

(36) On June 27, 2012, the Debtor filed an Emergency Motion to Supplement her Motion To Stay Enforcement in the State Appellate Court.

(37) On June 28, 2012, the State Appellate Court denied the Debtor's Motion To Stay Enforcement.

(38) On June 28, 2012, EEI served Merrill Lynch with a copy of the Supplemental Turnover Order.

(39) On June 28, 2012, at a hearing on the Motion for Rule To Show Cause and Sanctions, the State Trial Court ordered the Debtor to produce all requested documents by July 9, 2012, and appear for the continued examination on the Citations by July 12, 2012. The matter of sanctions was reserved for future consideration.

(40) On July 2, 2012, EEI filed its Third Motion for Turnover directed at copyrights owned by the Debtor and royalties flowing therefrom.

(41) On July 3, 2012 (the "Petition Date"), the Debtor commenced the above-captioned proceedings by filing a Chapter 7 bankruptcy petition.

(42) On July 19, 2012, at the hearing on EEI's Third Motion for Turnover, EEI's counsel informed the State Trial Court of the Debtor's bankruptcy filing, and the proceedings pending in the State Trial Court were stayed pending further orders in this court.

(43) Due to the filing of the Debtor's bankruptcy petition, the proceeds of the Merrill Lynch accounts were not turned over to EEI. The proceeds of the Merrill Lynch accounts remain in the possession of Merrill Lynch pending further order of this court.

## DISCUSSION

Before the court are crossing Motions from the Debtor and EEI based on the foregoing facts. The Debtor seeks avoidance under section 522(f) of the Bankruptcy Code. EEI seeks relief from stay under section 362 of the Bankruptcy Code, and defends against the Debtor's request, in part, based on sections 541 and 553 of the Bankruptcy Code.

The parties have raised a myriad of arguments both for and against the relief sought in the Motions. The court has, perhaps, compounded the complexity of this matter by combining the two related but ultimately different Motions into a single briefing schedule and combined Hearing. The already complex issues appear even more complex as a result.

For that reason, it is appropriate and, in fact, necessary to step back and view the issues from a simpler perspective. In that regard, the appropriate starting point for both of the Motions is a consideration of what constitutes property of the Debtor's bankruptcy estate.

A. <u>Property of the Estate under Section 541 of the Bankruptcy Code</u>

The determination of what is or is not property of a debtor's bankruptcy estate is controlled by section 541 of the Bankruptcy Code. Section 541 states, in pertinent part, that:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> > (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case ....

11 U.S.C. § 541(a)(1).

The estate created under section 541 of the Bankruptcy Code is the foundation upon which a debtor's bankruptcy case is built. For that reason, section 541 is given broad interpretation. *Maxwell v. Megliola (In re marchFIRST, Inc.)*, 288 B.R. 526, 530 (Bankr. N.D. Ill. 2002) (Schwartz, J.), aff'd, 293 B.R. 443 (N.D. Illl. 2003); *see also In re Jones*, 768 F.2d 923, 926-27 (7th Cir. 1985). Unless expressly excepted, every conceivable interest of the debtor, whether legal or equitable, liquidated or contingent, regardless of the extent of the interest, becomes property of the estate. *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993).

The limitations are, of course, rather self-evident. To the extent that a debtor once had an interest in property but, as of the commencement of the bankruptcy case, no longer does, that

6

interest does not become property of the estate. *In re Rasberry*, 264 B.R. 495, 499 (Bankr. N.D. Ill. 2001) (Squires, J.). For example, contractual rights that have expired by their own terms or been terminated prepetition and are not subject to revival and property interests that have been indefeasibly transferred prepetition do not become property of the debtor's estate. *Paloian v. Grupo Serla S.A. de C.V.*, 433 B.R. 19, 35-57 (N.D. Ill. 2010).

Each of the foregoing examples, however, has within it an inherent condition. With respect to the contractual rights, courts have held that an estate does include the prepetition rights of a debtor to revive contract rights to the extent the debtor could have, under applicable nonbankruptcy law, challenged the expiration or termination of the contractual rights. Thus, the right of challenge and the resulting contingent rights of revival of the contract become property of the estate. *Velo Holdings Inc. v. Paymentech, LLC (In re Velo Holdings Inc.)*, 475 B.R. 367, 386-88 (Bankr. S.D.N.Y. 2012). With respect to transfers of property interests, property not indefeasibly divested from the debtor also becomes property of the bankruptcy estate to the extent of the debtor's right to undo the transfer. *Dally v. Bank One, Chicago, N.A. (In re Dally)*, 202 B.R. 724, 727-28 (Bankr. N.D. Ill. 1996) (Schmetterer, J.).

There are essentially two ways in which the latter case may occur. First, as is the case with contract rights, the debtor may retain nonbankruptcy law rights to challenge and undo the transfer. Such rights and the resulting contingent rights in the property become property of the estate. *Yonikus*, 996 F.2d at 869. Second, bankruptcy law may create a right to avoid the transferred interest or the transfer itself. *See, e.g.*, 11 U.S.C. §§ 522(f), 547, 548 & 550.

Thus, if a debtor has a right to avoid a prepetition lien or transfer of property, the debtor's bankruptcy estate includes a contingent interest in that property to the extent of that right, and absent additional factors, includes an interest in the subject property post avoidance to the same extent as such interest would have become property of the estate on the petition date had the lien never attached or the transfer never had taken place.

B.    The Property at Issue in the Instant Matter

It is worth noting, as it informs the later discussion, that what is at issue in both the Stay Relief Motion and the Lien Avoidance Motion is primarily the Debtor's personal property.[1] Certain of the personal property is held in the Debtor's Merrill Lynch accounts (the "Merrill Lynch Accounts"), as follows:

| Type of Account | Amount Asserted by EEI | Scheduled Amount |
|---|---|---|
| Case Management Account | $1.45 | N/A |
| Roth Retirement Account ("Roth IRA") | $28.24 | $28.00 |
| Individual Retirement Account ("IRA") | $194,494.28 | $199,000.00 |

The rest is, generally, all of the personal property of the Debtor. As scheduled in the Debtor's schedule B and excluding those values scheduled as unknown, that personal property is

---

[1]    As discussed below, EEI does make certain arguments pertaining to the Debtor's real property and homestead exemption with respect thereto. No evidence supporting an interest in the real property is provided, however.

7

valued at $939,218.01. This amount includes the amounts in the Merrill Lynch Accounts, as set forth above.

C.  EEI's Liens on Property of the Estate

As grounds for the Stay Relief Motion, EEI has contented – among other things – that certain of the property of the estate is subject to liens in favor of EEI as a result of the actions taken by EEI prior to the Petition Date. The court agrees.

There appears to be no real dispute regarding this fact, and even if there were, the law is clear that the service of the Citations and the Garnishment gave rise to a judicial lien in favor of EEI in the subject personal property.

(1)  *The Citations*

It is a matter of established law that a judgment, in and of itself, does not elevate the debt within the judgment to a secured status. *In re Johnson*, 215 B.R. 381, 384 (Bankr. N.D. Ill. 1997) (Squires, J.). Something more is needed. *Id.*

In the first instance, that something more was the service of the Citations. More specifically, as noted above, the parties are in agreement that the Original Third Party Citations were served on October 4, 2011, the Alias Citation was served on October 21, 2011, and the Second Third Party Citation was served on December 28, 2011. The Debtor has not challenged the validity of the Citations or their service and the court, therefore, presumes that they were valid and served in accordance with applicable law.

Under Illinois law, proper service of a citation to discover assets does amount in a security interest in the subject property. *In re Dean*, 80 B.R. 932, 934 (Bankr. N.D. Ill. 1987) (Squires, J.); *accord In re Swartz*, 18 F.3d 413, 417 (7th Cir. 1994); *Johnson*, 215 B.R. at 384. As Judge Wedoff has stated:

> Section 2–1402 of the Illinois Code of Civil Procedure sets forth procedures that a judgment creditor may follow in seeking satisfaction of a judgment. A creditor may commence these procedures by serving a citation to discover assets on either the judgment debtor or a third party holding property of the judgment debtor. 735 Ill. Comp. Stat. 5/2–1402(a) (2010). When a judgment creditor serves a citation to discover assets on a third party, a notice of that citation must also be sent to the judgment debtor. *Id.* at 5/2–1402(b). The citation notice must include a date on which the citation will be heard and must let the judgment debtor know that he or she has the right to assert statutory exemptions in certain income or assets. *Id.* ….
> The judgment becomes a lien on nonexempt property upon the service of a citation. *Id.* at 5/2–1402(m).

*In re Alanis*, Case No. 12 B 07465, 2012 Westlaw 1565355 at *2 (Bankr. N.D. Ill. May 2, 2012) (Wedoff, J.).

The Illinois statute makes clear that the foregoing lien (i) arises on the date the citation is served, (ii) "binds nonexempt personal property, including money, choses in action, and the effects of the judgment debtor," both in a debtor's possession in control and in the possession and control

8

of a third party (the latter when the citation is directed against the third party), and (iii) is inclusive of after-acquired property. 735 Ill. Comp. Stat. 5/2–1402(m).

It is clear, therefore, that the service of the Citations did in fact result in liens against the personal property of the Debtor, whether in possession of the Debtor, the Corporations or the Trust.

(2)    *The Garnishment*

As was the case with the Citations, the question regarding the Garnishment is a fairly straightforward one.

The parties agree that the Garnishment was served by EEI on Merrill Lynch on November 14, 2011. This service occurred outside of the 90-day window preceding the Debtor's Petition Date. The Debtor has not challenged the validity of the Garnishment or its service and the court therefore presumes that the Garnishment was valid and served in accordance with applicable law.

Under Illinois law, proper service of a garnishment order does give rise to a lien, which attaches to the garnishee's property at the time of service. 735 Ill. Comp. Stat. 5/12–707(a) states that: "The judgment or balance due thereon becomes a lien on the indebtedness and other property held by the garnishee at the time of service of garnishment summons and remains a lien thereon pending the garnishment proceeding." *See In re Bill Cullen Electrical Contr.*, 156 B.R. 235, 237 (Bankr. N.D. Ill. 1993) (Katz, J.); *accord Ealy v. Ford Motor Credit Co. (In re Ealy)*, 355 B.R. 685, 688 (Bankr. N.D. Ill. 2006) (Hollis, J.). Such lien is perfected at the time of service. *Prior v. Farm Bureau Oil Co. (In re Prior)*, 176 B.R. 485, 495 (Bankr. S.D. Ill. 1995).

It is clear, therefore, that the service of the Garnishment did in fact result in a lien against the personal property of the Debtor in the Merrill Lynch Accounts.

D.    EEI's Claim of Ownership

The parties do not appear to be in agreement, however, as to whether any actions of EEI resulted in the Debtor having lost its interest in certain of its property prior to the Petition Date, thus preventing such property from becoming property of the bankruptcy estate. 11 U.S.C. § 541; *Rasberry*, 264 B.R. at 499.

In this regard, EEI makes two contentions: That the entry of and service on Merrill Lynch of the Turnover Order effected a transfer to EEI of the Debtor's prepetition interests in the property in Merrill Lynch's possession; and that EEI's set off of royalties received by EEI on behalf of the Debtor against the obligation memorialized in the Judgment resulted in those royalties no longer being assets of the bankruptcy estate. The court will consider each in turn.

(1)    *The Turnover Order*

As noted above, the service of the Citations and the Garnishment unquestionably resulted in a lien against the subject property. The effect of the entry and service of the Turnover Order, however, is not as clear. No Illinois statute addresses "the effect that the entry of a turnover order has on the ownership of the property, and there appears to be no state or federal court decision addressing this question." *In re Alanis*, 2012 Westlaw 1565355 at *2.

EEI relies on the case of *Busey Bank v. Salyards*, 304 Ill. App.3d 214 (4th Dist. 1999), for the proposition that a turnover order is a transfer divesting the debtor of any interest in the property. The *Busey Bank* case does indeed discuss this issue, but in a roundabout way. While the state court appears to adopt a position that "when the turnover order was entered ..., the [debtor] no longer had an interest in the [property]," *id.* at 220, its discussion is in fact based on bankruptcy law, not on Illinois state law. *Id.*; *see Taylor v. Millikin Nat'l Bank (In re Dean)*, 80 B.R. 932, 934 (Bankr. C.D. Ill. 1987) (adopting the reasoning of *Nealis* without comment); *Nealis v. Ford Motor Credit Co. (In re Nealis)*, 52 B.R. 329, 333 (Bankr. N.D. Ill. 1985) (Hertz, J.) (discussing how a wage deduction order, which was not in existence in the matter before it, might divest a debtor of its interest in the subject property).

Thus *Busey Bank* does not constitute good law on this issue, as the precedent upon which it relies is neither on point nor based on Illinois law.

The discussion of this issue in *Alanis* is, however, directly on point and persuasive. In *Alanis*, Judge Wedoff finds the citation lien and turnover order situation akin to that of a statutory tax lien and seizure order. *In re Alanis*, 2012 Westlaw 1565355 at *2-3. Applying the Supreme Court's reasoning in *United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983), he reasons that, as with a tax seizure, the turnover order simply effects a change in possession. *In re Alanis*, 2012 Westlaw 1565355 at *3. Presumably once newly possessed property is set off against the debt secured by the tax lien, then a true divestiture would then occur.

In addition, Judge Wedoff examines *Barnhill v. Johnson*, 503 U.S. 393 (1992), wherein the Supreme Court found that the date a check is honored, rather than the date a check is tendered, is the date an actual transfer occurs. *In re Alanis*, 2012 Westlaw 1565355 at *3. He concludes, therefore, that "[l]ike a check, the state court turnover order directed payment of the funds in [debtor's] bank accounts to [judgment creditor], but until that order was served on the bank and the bank complied with the order, thus 'charging' the accounts, the funds in the accounts continued to belong to [debtor] and became property of her bankruptcy estate upon the filing of her bankruptcy case." *Id.*

This court finds Judge Wedoff's reasoning to be compelling, especially in light of the lack of clear direction from the Illinois state courts. The facts in this matter make clear that, despite the service of the Turnover Order on Merrill Lynch, the funds in question continue in the custodianship of Merrill Lynch. As with a check that is never cleared, a turnover order for which no prepetition turnover was in fact effectuated does not constitute a transfer for the purposes of defeating the application of section 541 of the Bankruptcy Code.

The court therefore rejects EEI's contention with respect to the effect of the Turnover Order. The Debtor's ownership rights in its property in the possession of Merrill Lynch continued on the Petition Date and that property became property of the Debtor's bankruptcy estate, subject to the liens discussed above.

(2)    *Setoff*

Unlike the foregoing issue, the law with respect to prepetition setoff is clear. EEI argues that funds received by EEI as a result of royalty payments owed to Debtor but collected by EEI

10

have been set off against the Judgment, and thus "never became the property of [the Debtor], and are not property of the bankruptcy estate."

To the extent that a creditor sets off a prepetition debt against a prepetition obligation prior to the bankruptcy case having been commenced, such setoff does in fact effectuate a transfer that prevents the subject property from becoming property of the estate – except to the extent that such setoff may be a transfer avoidable under chapter 5 of the Bankruptcy Code. *In re Abbott*, Case No. 12-01166-8-SWH, 2012 Westlaw 2576469 at *1-2 (Bankr. E.D.N.C. 2012) ("If there was a valid setoff prior to bankruptcy, the property never becomes property of the estate."). There is no real point of contention with respect to this.

The court notes, however, that either through intention or inadvertence, EEI's argument with respect to the setoff of royalty payments fails to specify that the setoff took place prepetition. Response, at pp. 5-6. If it is EEI's contention that it has received postpetition royalties owed to Debtor and has set them off against the prepetition Judgment, thus preventing such royalties from becoming property of the bankruptcy estate, EEI is clearly mistaken.

While the Bankruptcy Code preserves the right of setoff, 11 U.S.C. § 553, the express provisions of the automatic stay (discussed below) make clear that no postpetition setoff is permissible without relief from stay. 11 U.S.C. § 362(a)(7). Because no relief from stay has been granted with respect to this matter, no postpetition setoff should have occurred. Had such setoff occurred without relief from stay, the act would be potentially sanctionable under section 362(k) of the Bankruptcy Code. 11 U.S.C. § 362(k). Further, such an act would be void as a matter of law. *In re Garofalo's Finer Foods, Inc.*, 186 B.R. 414, 436 (N.D. Ill. 1995) ("Violations of the automatic stay are void and without effect.").

As a result, the court agrees with EEI that – subject to any applicable right of avoidance under chapter 5 of the Bankruptcy Code – royalties which were set off prepetition against the Judgment did not become property of the bankruptcy estate. The court rejects, however, any contention that a postpetition setoff has had a similar result. Any postpetition royalties in the possession of EEI remain property of the Debtor's bankruptcy estate.

E.   EEI's Request for Relief from Stay

With that established, it is possible now to turn to EEI's Stay Relief Motion. EEI has requested relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code, so that it may continue its collection actions with respect to the Judgment, including enforcing the liens and/or other interests created by way of the Citations, Garnishment and Turnover Order. Such enforcement includes but is not limited to the continued setoff of amounts owed to EEI under the Judgment against royalties collected by EEI on the Debtor's behalf.

It is without question that the automatic stay is one of the most essential protections afforded property of the bankruptcy estate. Section 362 reads, in pertinent part, as follows:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

11

>    (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
>    (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
>    (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
>    (4) any act to create, perfect, or enforce any lien against property of the estate;
>
>    (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
>    (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; [and]
>
>    (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor ....

11 U.S.C. § 362(a)(1)-(7).

Each of the aforementioned subsections of section 362(a) are clearly implicated by EEI's intended conduct. For that reason, EEI has requested pursuant to section 362(d) of the Bankruptcy Code that it be afforded relief from said stay.

Section 362(d) reads, in pertinent part, as follows:

>    On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
>    (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
>    (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
>        (A) the debtor does not have an equity in such property; and
>
>        (B) such property is not necessary to an effective reorganization ....

11 U.S.C. § 362(d)(1) & (2). "Hearings to determine whether the stay should be lifted are meant to be summary in character. The statute requires that the bankruptcy court's action be quick." *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990).

The burdens with respect to the Stay Relief Motion are clearly established by the Bankruptcy Code. As stated in section 362(g),

> [i]n any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
>
> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>
> (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g)(1) & (2). Irrespective, however, of the burdens set forth in section 362(g), as the moving party, EEI bears "the burden of showing the existence, the validity, and the perfection of its secured claim against the Property." *In re Pelham Enters., Inc.*, 376 B.R. 684, 689 (Bankr. N.D. Ill. 2007) (Squires, J.).

As the court has rejected EEI's arguments with respect to the effect of the Turnover Order and any postpetition setoff, what remains before the court in this regard is fairly straightforward. EEI argues that, by operation of the Citations, Garnishment and Turnover Order, the Debtor has no equity in the subject property. EEI argues the Debtor's lack of equity is grounds for relief from stay under section 362(d)(2) of the Bankruptcy Code. EEI also contends that because this is a chapter 7 bankruptcy, lack of equity is the only grounds it need show. The court agrees.

EEI is a judgment creditor in the amount of $884,056.55. Said judgment was rendered on September 29, 2011, more than one year from the date of this Memorandum Decision. In Illinois, the rate of interest on judgments is set forth by statute to be 9%. 735 Ill. Comp. Stat. 5/2-1303 ("Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied ...."); *Schultz v. Lakewood Elec. Corp.*, 362 Ill. App.3d 716 (1st Dist. 2005) (finding the statutory rate of judgment interest in Illinois to be constitutional).

EEI is correct that because this is a chapter 7 case, there will be no reorganization, and therefore lack of equity is all EEI need show. *Vitreous Steel*, 911 F.2d at 1232 ("Because this is a liquidation under Chapter 7, there will be no reorganization. The only question faced by the bankruptcy court, then, was whether the debtor had equity in the property."); *accord In re McGaughey*, 24 F.3d 904, 906 (7th Cir. 1994).

Assuming no reduction in principal, therefore, and one year of judgment interest at the statutory rate, the balance presently owed on the Judgment is in excess of $963,621.64. The Debtor has scheduled on its schedule B of personal property in these cases personal property in a total estimated value of $939,218.01. Schedule B contains the contents of the Merrill Lynch Accounts, certain of the royalties at issue (including royalties noted to be withheld by EEI), and a variety of items of "Unknown" value. Also included are a contingent recovery in a malpractice lawsuit, the judgment in the District Court Lawsuit and the Debtor's beneficial interest in a self-settled trust.

Ignoring for the moment the Debtor's claimed exemptions, given the validity of the liens created by the service of the Citations and the Garnishment and that the Judgment exceeds the Debtor's own scheduled values of personal property, it appears to the court that the Debtor has no equity in its personal property. *Vitreous Steel Prods. Co.*, 911 F.2d at 1232 ("[T]he only issue properly

13

before the court on the motion to lift the automatic stay was whether Vitreous had any equity in the real estate. To answer that question, the court had to determine (1) the value of the real estate and (2) the amount of money owed the Bank. If the debt was greater than or equal to the value of the realty, then the stay was properly lifted."); *In re Moore*, 450 B.R. 849, 850-51 (Bankr. N.D. Ind. 2011) ("Equity in this sense focuses on whether the property in question has value in excess of the amounts due on account of the liens against it and any claimed exemption, so that its sale by the trustee would generate money for the payment of unsecured claims."). After excluding certain exempt property (as discussed below), the lack of equity in the personal property only becomes more evident.

However, as correctly noted by the Debtor, EEI has not provided the court with a specific accounting of funds that it has collected by way of royalties or other assets and offset against the Judgment. This court's calculation of the balance of the Judgment is, as a result, less than certain. The lack of specificity by EEI creates a conflict between its burden as the movant, 11 U.S.C. § 362(g)(1) & (2); *Pelham Enters.*, 376 B.R. at 689, and the fact that relief from stay hearings are intended to be summary in nature. *Vitreous Steel*, 911 F.2d at 1232.

For that reason, while it is clear that EEI does in fact have the status of judgment lien creditor in the personal property in question and, in that capacity and subject to the court's determination of the Lien Avoidance Motion, appears to be entitled to relief from stay, the court will condition any grant of stay relief in this matter on EEI providing the Debtor and the court with an accounting of the present balance owed on the Judgment and a list, with as much specificity as is practicable under the circumstances, of the identification and estimated value of the personal property it seeks to pursue.

## THE LIEN AVOIDANCE MOTION

As noted above, the determination on relief from stay requests is normally summary in nature. *Vitreous Steel*, 911 F.2d at 1232. As such, the question of whether a movant's liens are subject to avoidance is not ordinarily a consideration. *Vitreous Steel*, 911 F.2d at 1234 ("The possible avoidability of a transfer to a creditor under § 547 is not part of the inquiry a court is required to conduct on a motion to lift the stay . . . .").

However, whether by design or by coincidence, the Stay Relief Motion and the Lien Avoidance Motion were presented to the court at the same time, and as a result, the court finds that consideration of the Lien Avoidance Motion in the context of the Stay Relief Motion is inevitable, as one calls into question the other. *Accord Reconstruction Fin. Corp. v. Lustron Corp. (In re Lustron Corp.)*, 184 F.2d 789, 795-96 (7th Cir. 1950), *cert. denied* 340 U.S. 946 (1951) (finding that under the Bankruptcy Act, the injunctive powers of bankruptcy were properly employed to halt proceedings with respect to liens, the validity of which was called into question by concerns of preference).

The questions the court must answer in this regard are fairly basic: Does the Debtor have the right to claim as exempt certain property as to which the State Trial Court has previously found the Debtor had waived its exemption? If it does, may the Debtor avoid EEI's liens in such property? If each of the foregoing questions are answered in the affirmative, stay relief is inappropriate as to those assets as EEI's lien will be avoided (to the extent of the avoidance), thus defeating EEI's grounds for the request. *Moore*, 450 B.R. at 850-51. The court will consider each issue in turn.

A.  <u>The Debtor's Right to Bankruptcy Exemptions</u>

Section 522(b) of the Bankruptcy Code provides for a set of federal exemptions applicable to all debtors in states that have not "opted out" of the federal exemption scheme. 11 U.S.C. § 522(b)(1); *In re Fishman*, 214 B.R. 568, 571 (Bankr. N.D. Ill. 1999) (Wedoff, J.). Illinois, however, is one of those states that has chosen instead to provide for exemptions under state law, as authorized under section 522(b)(2). 11 U.S.C. § 522(b)(1); 735 Ill. Comp. Stat. 5/12-1201; *Clark v. Chicago Municipal Employees Credit Union*, 119 F.3d 540, 543 (7th Cir. 1997); *Fishman*, 214 B.R. at 571-72. Thus, only Illinois exemptions are available to Illinois debtors.

(1)  *The Debtor's Claim of Exemptions Against Its Personal Property*

Bankruptcy Rule 4003 provides that a debtor may claim property as exempt under section 522 of the Bankruptcy Code by indicating the claimed exemption on the Debtor's schedule of assets filed with the court per FRBP 1007. *See* Fed. R. Bank. P. 4003(a); Fed. R. Bank. P. 1007(b)(1)(A).

In this case, the Debtor has claimed certain property as exempt, as follows:

| Description/Illinois Statutes | Value of Exemption | Value of Property |
|---|---|---|
| Homestead<br>735 Ill. Comp. Stat. 5/12-901 | $15,000.00 | $350,000.00 |
| Checking account<br>735 Ill. Comp. Stat. 5/12-1001(b) | $87.00 | $87.00 |
| Household goods and furnishings<br>735 Ill. Comp. Stat. 5/12-1001(b) | $1,000.00 | $1,000.00 |
| Books, pictures, etc.<br>735 Ill. Comp. Stat. 5/12-1001(b) | $100.00 | $100.00 |
| Wearing apparel<br>735 Ill. Comp. Stat. 5/12-1001(a) | $500.00 | $500.00 |
| Furs and Jewelry<br>735 Ill. Comp. Stat. 5/12-1001(b) | $250.00 | $250.00 |
| Firearms, sports, photographic & hobby equip.<br>735 Ill. Comp. Stat. 5/12-1001(b) | $100.00 | $100.00 |
| Merrill Lynch IRA<br>735 Ill. Comp. Stat. 5/12-1006 | 100% | $199,000.00 |
| Merrill Lynch Roth IRA<br>735 Ill. Comp. Stat. 5/12-1006 | 100% | $28.00 |
| Defined benefit pensions<br>735 Ill. Comp. Stat. 5/12-1006 | 100% | $1,238.00/mo. |
| EEI royalties receivable<br>735 Ill. Comp. Stat. 5/12-1001(b) | $1,963.00 | $42,024.00 |
| Automobile<br>735 Ill. Comp. Stat. 5/12-1001(c) | $2,325.00 | $2,325.00 |
| Misc. personal property<br>735 Ill. Comp. Stat. 5/12-1001(b) | $500.00 | $500.00 |
| Total: | $222,091.00 | |

(2)    *EEI's Challenge to Certain Exemptions*

Bankruptcy Rule 4003 provides that objections may be made to a Debtor's claims of exemptions within 30 days of the conclusion of the meeting of creditors held under section 341(a) of the Bankruptcy Code. Fed. R. Bank. P. 4003(b)(1). Should no objection asserted within the time frame set forth in Bankruptcy Rule 4003(b) be successful, a debtor's claim of exemptions is deemed valid. 11 U.S.C. § 522(*l*) ("[u]nless a party in interest objects, the property claimed as exempt on such list is exempt."); *In re Hice*, 223 B.R. 155, 157 (Bankr. N.D. Ill. 1998) (Squires, J.).

Here, while no party—including EEI—has filed an objection to the Debtor's claims of exemptions, the time for bringing such objections has not passed as the section 341(a) meeting has not yet been concluded. While the Debtor's unobjected to exemptions are facially valid, therefore, they are not unassailably so. Thus the court must further consider EEI's challenge to the Debtor's invocation of section 522(f) based on EEI's argument that the claimed exemptions are inappropriate. *Lustron*, 184 F.2d at 795-96; *Schoonover v. Karr*, 285 B.R. 695, 698-99 (S.D. Ill. 2002).

Specifically, EEI has, in response to the Lien Avoidance Motion, challenged (a) the Debtor's homestead exemption of $15,000.00, (b) the Debtor's claim of exemption as against the Merrill Lynch Accounts and (c) the Debtor's wild card exemption of $1,963.00 as against EEI royalties receivable. Response, p. 6.

As to the first challenge, the court quite frankly sees no basis in law under which EEI can claim a lien in the Debtor's real property, and EEI has done little to help the court in this regard. EEI does not request relief from stay as to the Debtor's homestead in the Stay Relief Motion. In fact, nothing in EEI's pleadings, other than the specific challenge noted above, stands for the proposition that EEI has anything other than a claim as against personal property. In addition, nothing in the Illinois statutes pertaining to citation and garnishment liens appears to give rise to an interest in real property, and nothing in the Turnover Order appears to address the Debtor's real property.

In Illinois, to claim an interest in real property that is enforceable as to third parties, a creditor must record that interest in accordance with applicable law. 765 Ill. Comp. Stat. 5/28-31; *Johnson*, 215 B.R. at 384. Judgment liens are no different. *Johnson*, 215 B.R. at 384; *United Community Bank v. Prairie State Bank & Trust*, 2012 Ill. App.4th 110 (4th Dist. 2012). EEI has presented no evidence of having done anything of the sort with respect to the Debtor's homestead, and it is not the court's responsibility to craft an argument for EEI that it has not seen fit to make. *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("It is not this court's responsibility to research and construct the parties' arguments."). For that reason, EEI's challenge to the Debtor's homestead exemption must fail.

As to the second challenge, the basis of EEI's argument in this regard is that the State Trial Court ruled, prior to the Petition Date, that the Debtor had failed to timely assert its state law exemptions in response to the Citations, and thus waived those exemptions.

EEI is asking, in essence, that this court treat the State Trial Court determination in this regard as binding, presumably either as a matter of *res judicata* or by application of the *Rooker-Feldman* doctrine. *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983) (together holding that federal courts do not have subject-matter jurisdiction to

review state court decisions). With respect to either basis, EEI's argument must fail. The court here is not acting to overturn, set aside or otherwise interfere with the State Trial Court's orders. The State Trial Court's determination that the Debtor waived its exemptions in the context of the Citations remains the law. The resulting liens against the Debtor's assets – including assets to which liens would ordinarily not attach such as the IRA and the Roth IRA – remain.

The questions put to this court are different ones. May a debtor, as a matter of bankruptcy law, claim exemptions in those assets and, as a result, avoid any judicial liens that impair the exemptions? The answer is clearly yes. Does a debtor waive its bankruptcy exemptions by unintentional prepetition conduct? The answer is clearly no.

This is not an issue of first impression in this district. Judge Hollis has considered whether a failure to claim funds as exempt in a state court proceeding resulted in a debtor's waiver of that right in a subsequent bankruptcy, and concluded that a prepetition waiver "has no bearing on whether [the debtor] waived his exemption in this bankruptcy proceeding." *Crowell v. Porayko (In re Porayko)*, 443 B.R. 419, 426 (Bankr. N.D. Ill. 2010) (Hollis, J.). Judge Cox considered whether *res judicata* or the *Rooker-Feldman* doctrine barred a debtor's claim of bankruptcy exemptions, and concluded:

> In spite of the applicability of *res judicata* and the *Rooker–Feldman* doctrine to other issues, the Court may address the merits of this argument because it raises the issue of the chapter 7 debtor's right under the U.S. Bankruptcy Code to claim exemptions and to use the avoidance provision for liens impairing exemptions, see 11 U.S.C. § 522 (West 2003); 735 Ill. Comp. Stat. Ann. 5/12–1001(b) (West 2003), and these § 522 issues could not have been litigated until Watkins sought protection under the Code.

*In re Watkins*, 298 B.R. 342, 351 (Bankr. N.D. Ill. 2003) (Cox, J.).[2]

This court agrees.

Finally, as to the wild card exemption, the reasoning with respect to the Merrill Lynch accounts applies here as well. However, the preceding discussion was simplified by the court's earlier rejection of EEI's argument that the Debtor's interest in the subject property has been entirely divested. With respect to the accounts receivable which are subject to the wild card exemption, a finer distinction need be drawn.

As noted above, to the extent that EEI validly and properly set off the obligations under the Judgment against the royalties owed to the Debtor prior to the Petition Date, such a transaction did divest the Debtor of its interest in the royalties. *Abbott*, 2012 Westlaw 2576469 at *1-2. There is no

---

[2] The court is aware that other courts have ruled differently. *See, e.g., In re Dalip*, 194 B.R. 597, 603-04 (Bankr. N.D. Ill. 1996) (Schemetterer, J.) (finding an Illinois agreed order waiving a homestead exemption to be *res judicata* on a bankruptcy determination of exemptions). The court finds *Dalip* to be distinguishable. The order in *Dalip* was agreed to by the Debtor, and was determined by the bankruptcy court to be a ruling on the merits of the Debtor's exemption. Nothing in the court's ruling today reaches such a set of facts. The State Trial Court order here ruled only that the Debtor had waived its rights involuntarily by failing to follow proper procedure. Such a ruling is not a decision on the merits for the purposes of *res judicata* in this context. The bankruptcy procedures for claiming exemptions are clear, and the Debtor has complied with those procedures.

lien to avoid, and no estate property in which an exemption may be claimed. To the extent, however, that EEI holds royalties that were collected after the Petition Date, such royalties may not have been set off against the Judgment, 11 U.S.C. § 362(a)(7), or if, in violation of the stay, such setoff was attempted, the setoff is void. *Garofalo's Finer Foods*, 186 B.R. at 436. The result in either case is the same: Any postpetition royalties collected by EEI are property of the bankruptcy estate. The Debtor may claim an exemption in such property.

As noted above, EEI's failure to actually account for the current balance of the Judgment is problematic and causes the court difficulty in this regard. Until such time as EEI makes such an accounting, the court cannot determine if EEI holds estate property against which the Debtor's valid wild card exemption can be applied.

B.  Lien Avoidance under Section 522(f) of the Bankruptcy Code

Section 522 of the Bankruptcy Code states, in pertinent part, that:

> (f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> > (A) a judicial lien, other than a judicial lien that secures a debt of the kind that is specified in section 523(a)(5) ....

11 U.S.C. § 522(f)(1).[3]

By its express terms, section 522(f) applies to liens and the fixing thereof, and not to other transfers of interests in property. *See, e.g., Johnson v. Ford Motor Credit Co. (In re Johnson)*, 53 B.R. 919, 924 (Bankr. N.D. Ill. 1985) (Ginsberg, J.) (finding that the transfer avoidance powers under section 547 are independent remedies to the lien avoidance powers under section 522(f)).[4] Specifically, section 522(f)(1)(A) applies to judicial liens, which are defined in the Bankruptcy Code as liens

---

[3] The exception in paragraph (3) relates to the voluntary waiver of exemptions in relation to nonpossessory, nonpurchase-money security interests in the implements, professional books, or tools of the trade of the debtor, which exception is not apparently at issue here. *See* 11 U.S.C. § 522(f)(3). Also not at issue here are liens arising in relation to domestic support obligations, the other express exception of § 522(f)(1)(A). *See* 11 U.S.C. § 523(a)(5).

[4] Because setoff is a transfer and not the fixing of lien, and is therefore beyond the scope of § 522(f), the court does not consider here whether EEI's prepetition setoff of received royalties is avoidable under § 522(f) of the Bankruptcy Code. The court does not also consider whether any such transfers during the 90 days preceding the Petition Date are avoidable as preferences, *see* 11 U.S.C. §§ 522(h) & 547, or under any other theory of avoidance — despite the Debtor's suggestion in its pleadings that preference avoidance may be sought but that for procedural reasons, it has not included the Lien Avoidance Motion. EEI has not squarely addressed § 522(h) in its filings, nor has it addressed the underlying sections such as § 547's power of preference avoidance. Thus while it is clear from the agreed facts that a number of salient acts occurred within the 90 days preceding the Petition Date, it is unclear and not properly before the court whether a cause of action in preference exists, and such a determination is beyond the scope of a relief from stay proceeding. *Vitreous Steel*, 911 F.2d at 1234.

"obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).

The definition of judicial liens contained in the Bankruptcy Code is not limited to those liens arising out of a judgment alone, and courts have liberally construed judicial liens to include liens of a wide variety. *See, e.g., Skinner v. First Union Nat'l Bank (In re Skinner)*, 213 B.R. 335, 341 (Bankr. W.D. Tenn. 1997) (an execution lien arising out of a sheriff's levy of execution is a "judicial lien" and may be avoided). Thus a debtor may under section 522(f) avoid the fixing of a judicial lien in property to the extent that the lien impairs the debtor's exemption, but may not avoid other transfers of interests relying on section 522(f) of the Bankruptcy Code alone.

To be clear, there is no question – despite EEI's limited arguments to the contrary – that citation liens and garnishment liens are, in fact, judicial liens within the meaning of the Bankruptcy Code in general and section 522(f) specifically. 11 U.S.C. § 101(36); *Bryant v. General Elec. Credit Corp. (In re Bryant)*, 58 B.R. 144, 146 (N.D. Ill. 1986) ("The [wage] garnishment is a judicial lien according to Illinois law"); *Johnson*, 215 B.R. at 384 (non-wage garnishment and citation liens are of a type of lien available to judgment creditors); *In re Weatherspoon*, 101 B.R. 533, 536 (Bankr. N.D. Ill. 1989) (Barliant, J.) ("All cases that have addressed the matter are in accord that liens under the citation or wage deduction statutes are judicial liens."); *Johnson v. Ford Motor Credit Co.*, 53 B.R. at 922 ("A [wage] garnishment lien is a judicial lien"); *Einoder v. Mount Greenwood Bank (In re Einoder)*, 55 B.R. 319, 324 (Bankr. N.D. Ill. 1985) (Ginsberg, J.) ("Illinois law clearly expresses the view that the initiation of a citation proceeding creates a judicial lien . . . ."); *Foluke v. Peoples Gas Light & Coke Co. (In re Foluke)*, 38 B.R. 298, 301 (Bankr. N.D. Ill. 1984) (Hertz, J.) (judicial lien is created by issuance of a citation to discover assets).

Because the court has already ruled that the Debtor's exemptions are, for these purposes valid, the Debtor has established its *prima facie* case for avoidance of the citation and garnishment liens under section 522(f) of the Bankruptcy Code.[5]

## CONCLUSION

For the foregoing reasons, the court concludes that the Debtor's Lien Avoidance Motion can and should be granted and EEI's objections thereto overruled. The court further concludes that the Stay Relief Motion will be granted in part, as follows:

(1) EEI will be granted relief from stay as against (a) those assets in which the Debtor has not claimed an exemption and in which EEI asserts a judicial lien and

---

[5] Because, as noted above, the time period within which objections may be brought to the Debtor's exemptions has not expired, and because EEI has raised only limited reasons under which it challenges the Debtor's exemptions, it should be made clear that the court's ruling with respect to the matter at bar does not constitute a ruling in general as to the validity of the Debtor's claim of exemptions. The court has answered the limited questions before it with respect to the party who posed them, nothing further. EEI did, however, have the opportunity to raise any and all issues it had with the Debtor's claim of exemptions on the subject property in the context of this matter. Such challenges having a common core of operative facts with an objection to the Debtor's exemption in general, no further objection in this regard from EEI would be appropriate. *In re Energy Co-Op, Inc.*, 814 F.2d 1226, 1231 (7th Cir. 1987).

(b) those assets in which the Debtor has claimed an exemption to the extent of the value of such assets exceeding the claimed exemptions;

(2) No order granting EEI relief from stay shall be entered by the court until such time as EEI files with the court an accounting of the balance of the Judgment, showing (a) all funds applied as against the Judgment, the date of that application and the source of the funds, (b) all interest accrued on the Judgment, and (c) all royalties with respect to Debtor collected by EEI on and after the Petition Date; and

(3) The Debtor's objections to the Stay Relief Motion insofar as it seeks relief against assets claimed exempt by the Debtor, to the extent of the claimed exemption, are sustained. Otherwise the Debtor's objections are overruled.

Separate orders will be issued concurrent with this Memorandum Decision.

Dated: October 10, 2012

_____
Hon. Timothy A. Barnes
United States Bankruptcy Judge