UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 12bk26779 |
| | ) | |
| VICTORIA C. QUADE, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

This matter comes before the court on the Motion for Stay Pending Appeal (the "Motion") [Docket No. 99] of Entertainment Events, Inc. ("EEI") regarding the Merrill Lynch retirement accounts (the "Merrill Lynch Accounts") of Victoria C. Quade (the "Debtor"). For the reasons set forth below, pursuant to the bankruptcy court's authority to tailor relief for the benefit of all parties in interest pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure ("Rule 8005"), the court will conditionally impose a stay pending appeal as to the Merrill Lynch Accounts, subject to modification upon an application from the Debtor to this court, with notice to EEI, to lift said stay for a specific use of the funds contained in the Merrill Lynch Accounts.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the United States Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). A motion for stay pending appeal arises under 28 U.S.C. § 157 and is specified as a core proceeding under 28 U.S.C. § 157(b)(2)(A). *Doctors Hosp. of Hyde Park, Inc. v. Desnick (In re Doctors Hosp. of Hyde Park, Inc.)*, 376 B.R. 242, 245 (Bankr. N.D. Ill. 2007) (Schmetterer, J.).

Accordingly, final judgment is within the scope of the court's authority.

PROCEDURAL HISTORY

In considering the Motion, the court has evaluated the arguments of the parties at the July 24, 2013 hearing on the Motion (the "Hearing"), and has reviewed and considered the Motion itself, in addition to:

(1) Debtor's Memorandum in Opposition to Motion for Stay Pending Appeal [Docket No. 111];

(2) EEI's Reply in Support of Motion for Stay Pending Appeal (the "Reply") [Docket No. 115]; and

(3) Debtor's Memorandum Regarding Her Proposed Chapter 11 Plan [Docket No. 173].

The court has also taken into consideration all exhibits submitted in conjunction with the foregoing documents, as well as the orders underlying the appeal (the "Original Orders"). Though these items together do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, No. 93-C-188, 1993 WL 69146, at *2 (N.D. Ill. March 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket) (citing *In re Fin. Partners*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989) (Sonderby, J.)).

BACKGROUND

From consideration of the foregoing, the court finds as undisputed the following facts:

(1) On July 3, 2012, the Debtor commenced the above-captioned proceedings by filing a chapter 7 bankruptcy petition.

(2) On October 10, 2012, the court issued its Memorandum Decision (the "Original Memorandum Decision") [Docket No. 58] regarding the Debtor's Motion to Avoid Judicial Lien on Exempt Property and Recover Exempt Property (the "Motion to Avoid Judicial Lien") [Docket No. 21] and EEI's Motion for Relief from the Automatic Stay (the "Stay Relief Motion") [Docket No. 18], in which the court entered an order granting the Debtor's Motion to Avoid Judicial Lien and granted in part EEI's Stay Relief Motion as to those assets over which the Debtor did not claim an exemption, and in which EEI asserted a judicial lien as well as the value of assets exceeding the exemptions claimed by the Debtor. On that same day the court entered the Original Orders implementing the relief set forth in the Original Memorandum Decision.

(3) As a result of the Debtor's Motion to Avoid Judicial Lien being granted, the Debtor avoided EEI's lien against the Merrill Lynch Accounts, containing a value of approximately $199,000.

(4) EEI filed its Motion to Alter or Amend Judgment (the "Motion to Amend") [Docket No. 68] on October 24, 2012, asking this court to amend its judgment in the Original

2

       Memorandum Decision and rule that EEI's lien against the Merrill Lynch Accounts was not avoided because the property was not part of the bankruptcy estate.

(5) On November 13, 2012, the court entered an order granting and denying in part EEI's Motion to Amend, leaving unaltered the exempt status of the Merrill Lynch Accounts.

(6) EEI filed a Notice of Appeal [Docket No. 86] on November 26, 2012, followed by its Designation of Record on Appeal and Statement of Issues on Appeal, which set forth as follows:

    (A) Whether the turnover order entered in state court as to the Debtor's interest in certain Merrill Lynch Accounts, which was thereafter served on Merrill Lynch, effectively terminated Debtor's legal interest in those accounts.

    (B) Whether the Debtor had a legal or equitable interest in the Merrill Lynch Accounts when her bankruptcy petition was filed such that the Debtor could avoid a judicial lien on the Merrill Lynch Accounts.

    (C) Whether the bankruptcy court erred in entering an order avoiding EEI's judicial lien on Debtor's Merrill Lynch Accounts pursuant to section 522(f)(1) of the Bankruptcy Code.

(7) On January 8, 2013, the court entered an order [Docket No. 107] for a temporary stay on the Merrill Lynch Accounts to maintain the status quo. That order has, by agreement of the parties, been extended from time to time thereafter up to the present.

(8) On May 7, 2013, the Debtor filed a Motion to Convert to Chapter 11 Case (the "Motion to Convert") [Docket No. 128] upon which the court has not yet ruled.

(9) EEI now seeks a stay of the court's October 10, 2012 and November 13, 2012 orders to preserve the status quo during the pendency of the appeal, as pursuant to Rule 8005, a discretionary motion for stay pending appeal must be presented to the bankruptcy judge in the first instance.

## DISCUSSION

     Prior to the commencement of the bankruptcy case, EEI successfully sued the Debtor in the Circuit Court of Cook County, Illinois. The matter before the court is the present-day iteration of a dispute between the parties that dates back several years. On September 29, 2011, EEI registered a state court judgment against the Debtor in the amount of $884,056.55. Thereafter EEI took various steps to attempt to perfect interests in the Debtor's assets securing its judgment, and the Debtor commenced these proceedings. The essence of the dispute is the effect of EEI's various turnover motions against the Debtor and citations served on Merrill Lynch prior to the Debtor's chapter 7 bankruptcy filing on July 3, 2012. In these proceedings, the Debtor sought to avoid EEI's interests and the court, in the Original Memorandum Decision and Original Orders, sustained in part those efforts. EEI thereafter appealed, and now seeks a stay of the Original Orders pending that appeal. The Debtor opposes, claiming among other things an immediate need to access the funds which the court ruled were exempt.

The issue before the court is governed by Rule 8005 of the Federal Rules of Bankruptcy Procedure, which sets the standards for stays pending appeal. Rule 8005 provides, in pertinent part, that:

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel hereinafter, the bankruptcy judge may suspend or order the continuation of the other proceedings in the case under the Code or make any other appropriate order during the pendency of the appeal on such terms as will protect the rights of all parties in interest.

Fed. R. Bankr. P. 8005.

A motion for a stay pending appeal is an exceptional form of relief and requires a considerable showing from the movant. *In re Beswick*, 98 B.R. 904, 907 (N.D. Ill. 1989); *see also In re Running*, No. 89 C 20211, 1990 WL 53063, at *1 (N.D. Ill. April 17, 1990); *Henkel v. Lickman (In re Lickman)*, 301 B.R. 739, 742 (Bankr. M.D. Fla. 2003). With a balancing test such as the one implicated by Rule 8005, the court has the authority to weight particular factors more heavily than others, depending on the unique circumstances of a case. *In re Dakota Rail Line, Inc.*, 111 B.R. 818, 820 (Bankr. D. Minn. 1990).

A. <u>The Rule 8005 Four Factor Analysis</u>

Four factors are used in deciding whether a discretionary stay pending appeal is appropriate. *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997). The factors are as follows: "1) whether the appellant is likely to succeed on the merits of the appeal; 2) whether the appellant will suffer irreparable injury absent a stay; 3) whether a stay would substantially harm other parties in the litigation; and 4) whether a stay is in the public interest." *Id.* The party seeking a stay has the burden of proving it has met the first two threshold factors in a preliminary analysis, and if the movant succeeds, all four factors are considered on a sliding scale. *Id.* at 1300–01. Should the applicant not meet the preliminary threshold or, assuming the threshold is met, not meet the overall standards, the stay should be denied. *Id.*

(1) *Likelihood of Success on the Merits*

As a threshold matter, the applicant for a stay pending appeal must first show *some* likelihood of success on the merits. *Forty-Eight Insulations*, 115 F.3d at 1300–01. Without such a showing, no further inquiry from the court is merited. *Id.* Once the threshold burden is met, however, the applicant is required to make a stronger showing of the likelihood of success on the merits than the mere possibility of success that is required in a preliminary injunction context. *Id.* at 1300 (*citing Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). This is due to the fact that a court has previously substantively evaluated the applicant's arguments. *Id.*; *see also Adams v. Walker*, 488 F.2d 1064, 1065 (7th Cir. 1973) (a stay applicant is required to make a "substantial showing of probable success"). While this probability of success, laying somewhere along a continuum of likeliness, requires a substantial showing, it also calls for something less than a

4

demonstration that the applicant will probably win on appeal. *Lewis v. City of Chicago*, No. 98 C 5596, 2007 WL 1686975, at *1 (N.D. Ill. June 7, 2007).

Here, EEI claims that there is no authority for the precise question on appeal—mainly, the effect of a turnover order on investment accounts where the turnover order was served prior to a bankruptcy filing. That quite simply is not the case. Judge Wedoff of this court has already ruled on substantially similar issues in *In re Alanis*, No. 12 B 07465, 2012 WL 1565355 (Bankr. N.D. Ill. May 2, 2012) (Wedoff, J.). The court relied in part on *Alanis* in issuing the Original Memorandum Decision. EEI nonetheless asserts in its Motion that the facts in *Alanis* are distinguishable, but fails to provide a reason why. Instead, it simply states that it is "[EEI's] sincere contention and belief that it will succeed on the merits of its appeal." Mot. Stay Pending Appeal 3, December 17, 2012. While the court appreciates EEI's faith in its position, a movant's belief alone that it will win on appeal is not enough. *See Griepentrog*, 945 F.2d at 153 (a movant seeking review on appeal of a judgment on the merits is less likely to be successful because the parties' arguments have already been fully evaluated).

In its Reply, EEI attempts to address this shortcoming by asserting that the only Illinois case on point supports its position on appeal. However, the court already evaluated this argument in issuing the Original Memorandum Decision, as follows:

> EEI relies on the case of *Busey Bank v. Salyards*, 304 Ill. App. 3d 214, 238 Ill. Dec. 197, 711 N.E. 2d 10 (4th Dist. 1999), for the proposition that a turnover order is a transfer divesting the debtor of any interest in the property. The *Busey Bank* case does indeed discuss this issue, but in a roundabout way. While the state court appears to adopt a position that "when the turnover order was entered . . . , the [debtor] no longer had an interest in the [property]," its discussion is in fact based on bankruptcy law, not on Illinois state law. . . . Thus *Busey Bank* does not constitute good law on this issue, as the precedent upon which it relies is neither on point nor based on Illinois law.

*In re Quade*, 482 B.R. 217, 228 (Bankr. N.D. Ill. 2012) (Barnes, J.) (some citations omitted). EEI is correct in asserting in its Reply that where an issue is not clear the chances on appeal are not negligible. As such, EEI has met the threshold burden of *Forty-Eight Insulations*. Nonetheless, the court has already previously addressed the inapplicability of *Busey Bank* to the issue on appeal and sees no reason to reach a different conclusion here.

The law in regard to the point of time in which a turnover order effects a change in ownership of property is in fact more established than EEI has asserted. In the Original Memorandum Decision, the court found Judge Wedoff's reasoning in *Alanis* compelling in part because it relied on a Supreme Court case, *United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983), in finding a turnover order situation analogous to a statutory tax lien and seizure order in creating a change in possession. EEI has not asserted a new argument or controlling case law in opposition to the case law relied on by the court or reasoning that would assist the court in finding that the authority in regard to the issues on appeal is unclear. Furthermore, the court can find no evidence of a split of authority in the relevant case law for the issues on appeal.

The court has noted in the past when there is a degree of uncertainty in certain matters when issuing a decision—that is not the case here. Because EEI does not raise any substantial issues or

5

persuasive reasoning showing that it has a heightened chance of success on appeal, the court finds that the first factor is not met.

    (2)    *Irreparable Injury Absent a Stay*

The second factor in the movant meeting its threshold burden under Rule 8005 is a showing of irreparable injury absent a stay. *Forty-Eight Insulations*, 115 F.3d at 1300. The Seventh Circuit in *Forty-Eight Insulations* found the Sixth Circuit's analysis of the second factor in *Griepentrog* well-articulated. *Id.* The Sixth Circuit stated that "the harm alleged must be both certain and immediate, rather than speculative or theoretical. In order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again." *Griepentrog*, 945 F.2d at 154. A movant's fear of harm occurring that is only speculative is insufficient to meet the definition of an *irreparable* injury. *In re 203 N. LaSalle St. P'ship*, 190 B.R. 595, 598 (N.D. Ill. 1995) (the "irreparable injury" alleged by the movant, a creditor, was found to be speculative where the creditor feared the value of its collateral would decrease, but the possibility remained that under the debtor's plan the value could also still increase).

Not only must the harm alleged rise above being speculative in nature, but to be considered irreparable, economic injury alone is ordinarily not enough. As the D.C. Circuit has posited:

> The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) (emphasis in original); *see also In re Hostine*, 458 B.R. 392, 397 (Bank. E.D. Mich. 2011), *aff'd*, No. 11-14573, 2012 WL 2891220 (E.D. Mich. July 15, 2012) (finding that the liquidation of funds held by the debtors did not constitute irreparable injury); *Rossi, McCreery and Assoc., Inc. v. Abbo (In re Abbo)*, 191 B.R. 680, 683 (Bankr. N.D. Ohio 1996) (indicating that monetary harm by itself is not irreparable injury). Thus, monetary harm alone, without more, is insufficient to meet the requirement of irreparable injury absent the stay. Money is fungible.

In this case, EEI has alleged that, without the funds in the Merrill Lynch Accounts, insufficient assets exist for it to recover the EEI Judgment and that if the Debtor spends the funds while the appeal is pending, irreparable injury to EEI will result. EEI argues that, given the state of the Debtor's finances, money so spent may never be replaced.

EEI is assisted in this argument by the Debtor herself. The Debtor has provided a rough sketch of what the Debtor's chapter 11 plan might reflect if the pending Motion to Convert were granted. The Debtor indicates that approximately $96,000 of the roughly $199,000 in the Merrill Lynch Accounts would be contributed to the bankruptcy estate for the payment of administrative expenses and argues that of this $96,000, her attorneys should be given $50,000 as a deposit for work to be performed in the chapter 11 case. There is therefore a likelihood that a large portion of the money in the Merrill Lynch Accounts may be extinguished.

6

The Debtor's current financial situation, as presented in the parties' motions and at the Hearing, is unclear. It is unclear whether, as alleged by EEI, sufficient assets exist to fully satisfy the EEI Judgment absent the funds in the Merrill Lynch Accounts. After evaluating EEI's and the Debtor's arguments at the Hearing, the only logical conclusion is that the EEI Judgment may not be fully satisfied should no stay be implemented. As a result, EEI has shown sufficiently that it would likely receive less than the full value of the secured EEI Judgment should the court not impose a stay. While money is fungible, it may also in certain instances be irreplaceable as a matter of fact.

In sum, the court finds that the Debtor's ability to pay the EEI Judgment with assets outside of the exempt Merrill Lynch Accounts is questionable. A portion of the Merrill Lynch Accounts may be quickly spent if the court fails to impose a stay.

For these reasons, the court finds that the harm rises above the level of a speculative or merely economic injury to one that is concrete and unable to be remedied, thereby causing irreparable injury to EEI. EEI has therefore met both the threshold test and the overall burden with respect to irreparable injury.

(3)    *The Third and Fourth Factors—Harm to Other Parties and Whether a Stay Is in the Public Interest*

As noted above, the Seventh Circuit has indicated that a court's analysis should stop if the movant has not met the first two threshold factors. *Forty-Eight Insulations*, 115 F.3d at 1301. A movant must preliminarily show it has "*some* likelihood of success on the merits and that [it] will suffer irreparable harm if the requested relief is denied" before the court will analyze the remaining two factors in a "balance of harms" test. *Id.* at 1300–01 (emphasis added). As has been discussed, EEI has shown that its chances on appeal are not negligible and that it faces potential, irreparable injury. Because EEI has met the preliminary threshold (though not having met the overall burden on the first factor), it is appropriate to address the third and fourth factors.

The third factor is the possibility of harm to other parties. *Id.* at 1300. In this case, this harm may be viewed in two parts: harm to the Debtor and harm to other creditors. EEI claims the potential harm of a stay to the Debtor is minimal given that the Merrill Lynch Accounts have not previously been accessed by the Debtor. Past need does not, of course, automatically dictate future need. The Debtor has demonstrated a potentially fatal harm to her bankruptcy as she claims her pending desire to reorganize under chapter 11 will be thwarted if EEI's Motion is granted. The Debtor in her schedules and at the Hearing has shown that she has few other sources of funds. Without access to her frozen funds, the Debtor's chance of a reorganization is severely diminished.

The potential harm to a debtor's reorganization prospects by a stay pending appeal is something that has already been considered by Judge Wedoff of this court. In *203 N. LaSalle*, the district court affirmed Judge Wedoff's finding that a financing package that the debtor's chapter 11 plan relied on would be jeopardized by the issuance of a stay, thus harming the debtor, as the debtor's partners and investors would likely withdraw their money from the package in favor of other opportunities. *Id.* at 598. While harm to a debtor in the context of causing a confirmed chapter 11 plan to fail is not directly on point, the court finds the reasoning compelling. Here, the Debtor's potential chapter 11 conversion could be jeopardized should it grant the stay. Thus, the court finds that substantial harm to the Debtor could indeed occur should the stay be issued.

Harm to other parties in interest, namely other creditors, is also considered. The court in *Doctors Hospital* addressed harm to other creditors, stating, "[d]efendant essentially argues that the *status quo* is prolonged litigation, but that history does not mean that creditors of the estate have not been and will not be harmed by further delay." *Doctors Hosp. of Hyde Park, Inc.*, 376 B.R. at 249. There are, of course, other creditors in this case, notably another judgment creditor, Inland Commercial Property Management, who also argues that it has a secured interest in estate assets and who would be potentially harmed by prolonged litigation. Should this case be unable to proceed, these other creditors appear to be subject to potential harm.

Last is whether a stay is in the public interest. *Doctors Hospital* addresses the policy behind this factor, indicating that "[t]he public policy behind bankruptcy is the equality of distribution to creditors within the priorities established by the Code within a reasonable time. . . . [F]urther delay is contrary to that public policy, and therefore would not be in the public interest." *Id.*; *see Begier v. I.R.S.*, 496 U.S. 53, 58 (1990) (discussing that equal distribution of funds amongst creditors is a core element of the Bankruptcy Code).

As indicated by EEI at the Hearing, the appeal to which the Motion relates is presently voluntarily stayed, and needs to be reopened by EEI with the district court. It appears likely that the appeal will therefore not be resolved for another eight to twelve months at a minimum. In line with Judge Schmetterer's reasoning in *Doctors Hospital* that further delay during an appeal may negatively impact the public interest by extending litigation past a reasonable time, so too would the public interest be harmed here should EEI's Motion be unconditionally granted.[1] The *Doctors Hospital* concerns exist here as well, and that the public interest may be negatively impacted due to the delay in the bankruptcy case that may result if the funds in the Merrill Lynch Accounts are frozen for the duration of the appeal.

In summary, EEI has sufficiently crossed the threshold on the first two factors such that deeper inquiry into those factors, as well as consideration of the remaining two factors, is warranted. Upon such deeper review, the court concludes that the second factor swings most strongly in EEI's favor, while the third and fourth factors favor the Debtor. The first factor, while providing a minimum showing sufficient to meet the preliminary threshold test in *Forty-Eight Insulations*, does not on further inquiry favor either party.

The court is therefore faced with a conundrum. This can be solved, however, by exercise of the remaining authority in Rule 8005, which affords the court express authority to tailor equitable relief.

---

[1] The Debtor has also asserted that EEI should be required to post a supersedeas bond as a precondition to a stay under Rule 8005. This argument is not well taken under Rule 8005. *See Gleasman v. Jones, Day, Reavis, & Pogue (In re Gleasman)*, 111 B.R. 595, 599 (Bankr. W.D. Tex. 1990) ("The nature of bankruptcy proceedings is such that supersedeas stays are seldom applicable, as most bankruptcy court rulings adjust the relative rights of parties to property."). Contrast this with Rule 7062, under which the party against whom a monetary judgment has been entered may only obtain a stay of the judgment pending appeal through the posting of a supersedeas bond. *See Raymond Professional Group, Inc. v. William A. Pope Co. (In re Raymond Prof'l Grp., Inc.)*, 438 B.R. 130, 136-37 (Bankr. N.D. Ill. 2010) (Schmetterer, J.) (indicating that "a *supersedeas* bond is mandatory only if the appellant seeks a stay without court order . . . that is, if the appellant cannot or does not wish to post a bond, it can seek a discretionary stay pending appeal.").

B.   <u>The Court's Ability to Tailor Relief</u>

In this case, EEI has failed to meet the substantial showing required for the first factor but has met its burden in the second factor. The third and fourth factors favor the Debtor. Pursuant to the court's authority under Rule 8005 to tailor relief to protect the rights of all parties in interest, the court may, however, nonetheless provide a form of relief.

Rule 8005 provides that "the bankruptcy judge may suspend or order the continuation of the other proceedings in the case under the Code or make any other appropriate order during the pendency of the appeal on such terms as will protect the rights of all parties in interest." Fed. R. Bankr. P. 8005. The Seventh Circuit addressed the flexibility of Rule 8005 in *Forty-Eight Insulations*, stating, "[a]s is the case with other forms of equitable relief, a court's decision to deny a Rule 8005 stay is highly discretionary." *Forty-Eight Insulations, Inc.*, 115 F.3d at 1301. While the Seventh Circuit addressed the court's discretion in *denying* a stay, this freedom of choice also applies in fashioning alternative relief for the parties in interest. The court in *Westwood Plaza Apts.* addressed this discretionary authority, stating:

> . . . Rule 8005 provide[s] the Court with discretionary power when determining whether to grant a stay upon appeal . . . with its more flexible language authorizing a court to uniquely tailor relief to the circumstances of the case. Further, Rule 8005 provides a court with substantially broader discretion than that afforded by Rule 7062.

*In re Westwood Plaza Apts, Ltd.*, 150 B.R. 163, 165 (Bankr. E.D. Tex. 1993); *see also In re Hagel*, 184 B.R. 793, 798–99 (B.A.P. 9th Cir. 1995) (emphasizing the discretion of Rule 8005 in stating a court *may* suspend other proceedings, not that it *must*). This "discretionary power" brings with it the ability to give greater weight to particular factors in a given case. *In re Charter Co.*, 72 B.R. 70, 72 (Bankr. M.D. Fla. 1987). The factors may be balanced against each other despite one factor not being met. *In re Dakota Rail Line, Inc.*, 111 B.R. at 820.

Until such time as the court's Original Orders become final, the Merrill Lynch Accounts remain property of the bankruptcy estate and subject to EEI's claim of lien. In order to best balance the interests of all parties, it is more appropriate for the court to fashion an equitable remedy than make a binary decision on the Motion. To do otherwise would likely result in harm to the unsuccessful party.

As a result, the court finds it appropriate to impose a conditional stay as to the Merrill Lynch Accounts. Such stay shall remain in effect until the earlier of the Original Orders becoming final or the court ordering otherwise. So as to balance the interests of the Debtor in funds that the court has determined to be exempt, the court will entertain, on a case-by-case basis, requests of the Debtor to utilize the funds contained in the Merrill Lynch Accounts in the same manner as it would entertain a motion to use property of the estate outside the ordinary course of business under section 363(b)(1) of the Bankruptcy Code. The Order accompanying this Memorandum Decision will implement said stay.[2]

---

[2]   The court notes that the Debtor has, in opposing the Motion, noted proposed use of $96,000 for a chapter 11 case, consisting of a $50,000 retainer for her counsel in seeking conversion and the remainder for funding of the Debtor's forthcoming—should conversion be granted—plan of reorganization. Such proposed use is not a request

9

## CONCLUSION

For the foregoing reasons, the court concludes that EEI's Motion should be granted in part, and denied in part, in the manner described above.

An order will be issued concurrent with this Memorandum Decision.

Dated: August 8, 2013

_____
Hon. Timothy A. Barnes
United States Bankruptcy Judge

---

upon which the court can rule in this context. Nonetheless, the court notes that the proposed retainer is excessive and poorly documented as to need, and would not, without further record, meet the standards the court anticipates for such requests. The court anticipates that the Debtor will hold herself to a higher standard on any request for such use; if and when made.

10